FILED BY ___KHR___ D.C.

Jun 2, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. ___26-MJ-6301-SHAW-WILDER___

IN RE SEALED COMPLAINT

_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?    No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?   No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   _____
Camille C.T. Smith
Assistant United States Attorney
Florida Bar No.: 116927
U.S. Attorney's Office
500 East Broward Boulevard, 7th Floor
Fort Lauderdale, Florida 33394
Telephone: 954-356-7255
Email: Camille.smith@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

FILED BY_____ *KHR* ___D.C.

*Jun 2, 2026*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

| | | |
|---|---|---|
| United States of America | ) | |
| **v.** | ) | |
| Saul Alfonso Fajardo aka "Gordo," Justin Phihoang Le aka "Chino," Amari Tamire Hill aka "Black," Anthony Teruel Hernandez, Marikevles McNichols Jr. aka "Keeve," aka "Agent," and Weilen Hernandez | ) ) ) | Case No.  26-MJ-6301-SHAW-WILDER |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 26 - May 27, 2026_____ in the county of _____Broward_____ in the _____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(a)(1), (c), (g)(1) (A), (g)(1)(B) and 2 | Kidnapping and conspiracy to commit kidnapping |

This criminal complaint is based on these facts:
**SEE ATTACHED AFFIDAVIT.**

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Thomas Lester, FBI
*Printed name and title*

Sworn to before me and signed in-person.

Date: _____6/2/2026_____

_____
*Judge's signature*

City and state: _____Fort Lauderdale, Florida_____

_Honorable Detra Shaw-Wilder, U.S. Magistrate Judge_
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Thomas Lester, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.     I am a Special Agent for the Federal Bureau of Investigation (FBI) currently assigned to the Violent Crime/Fugitive Task Force in the Miami Division. I have been an FBI Special Agent since July 2024. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, federal offenses. As a Special Agent for the FBI, my duties involve the investigation of a variety of violations of federal offenses, including, but not limited to, bank robberies, Hobbs Act robberies, kidnapping, murder for hire, firearms violations, and carjacking.

2.     This information set forth in this Affidavit is provided in support of the attached criminal complaint charging Saul Alfonso Fajardo aka "Gordo" (FAJARDO), Justin Phihoang Le aka "Chino," (PHIHOANG), Amari Tamire Hill aka "Black" (HILL), Anthony Teruel Hernandez (A. HERNANDEZ), Marikevies McNichols, Jr., aka "Agent" (MCNICHOLS), and Weilen Hernandez (W. HERNANDEZ) with kidnapping and conspiracy to commit kidnapping, in violation of Title 18, United States Code, Sections 1201(a)(1), (c), (g)(1)(A), (g)(1)(B) and 2.

3.     The statements contained in this Affidavit are based upon my personal knowledge, as well as on information provided to me by other law enforcement officers. This Affidavit does not include every fact and circumstance known to me, but only the facts of the circumstances that I believe are sufficient to establish probable cause that the offenses were committed. As such, it does not include each and every fact known to law enforcement about this investigation.

**PROBABLE CAUSE**

4. On Wednesday, May 27, 2026, at around 1:11 A.M., Hollywood Police Department (Hollywood PD) received a transfer call from Planation Police Department in reference to an armed kidnapping that began the night before at 1111 N Ocean Drive, Hollywood, Florida (Margaritaville) on the fourth floor of the parking garage.

5. Witness 1, the reporter, stated on Tuesday, May 26, 2026, at approximately 7:00 P.M., he was with Victim 1, a minor, and they were waiting in the vicinity of a hotel located in the 1900 Block of N Ocean Drive, Hollywood, Florida (Hollywood hotel) for their friend, Victim 2, to leave work. While waiting for Victim 2, Victim 1 and Witness 1 met up with two friends "Saul," later identified as FAJARDO and a 17-year-old female (Minor Suspect), as well as an unidentified white male (Unidentified white male) and an unidentified white female (Unidentified white female).

6. While there, FAJARDO asked Victim 1 and Witness 1 to meet up with him at an address off US 27 where he said there was going to be a car show. FAJARDO stated to Victim 1, "meet them there, make sure you get there." Victim 1 told FAJARDO that he did not want to go, but FAJARDO kept pressuring Victim 1 to meet at the location.

7. Shortly thereafter, FAJARDO, Minor Suspect, and the other two unknown individuals left the area. When Victim 2, left work, Victim 2, Victim 1, and Witness 1 began walking on the boardwalk toward Margaritaville. While walking toward Margaritaville they were once again approached by FAJARDO and Minor Suspect. FAJARDO asked them if they wanted to come to his car (a red Hyundai Elantra hereinafter referred to as FAJARDO's car) and smoke weed. All parties agreed and walked to FAJARDO's car located in the Margaritaville parking garage on the 4th floor.

2

8.      While at the red Hyundai Elantra vehicle, Witness 1 observed Victim 1, and Victim 2 taken at gunpoint by multiple individuals who placed them into two separate vehicles. Witness 1 was not taken and was able to contact a friend who then reported the incident to Plantation Police Department (Plantation PD). Plantation PD referred the call to Hollywood PD. Hollywood PD initiated the instant investigation. The FBI was contacted and is leading the investigation.

### Victim 1's STATEMENT

9.      On May 27, 2026, law enforcement personnel made contact with Victim 1 who provided the following account:

10.     Victim 1 reports that on Tuesday, May 26, 2026, he was communicating with someone known to him as FAJARDO via text communications. FAJARDO was discussing a car show and ultimately sent Victim 1 an Instagram screenshot claiming to show the location of the car show. The screenshot contained GPS coordinates 26.1723537, -80.4486483. Later on that day, Victim 1 saw FAJARDO and Minor Suspect. The accounts of their interaction are consistent with the account provided by Witness 1.

11.     After arriving at Margaritaville parking garage, Victim 1 stated he entered the front passenger seat of FAJARDO's car while FAJARDO sat in the driver's seat. Victim 2 and Witness 1 were standing outside the vehicle. While Victim 1 was sitting in the front seat, he was rolling a joint with the passenger door open when he observed a blue Cadillac, pull up behind and stop. The blue Cadillac then sped off, turned around, and pulled behind FAJARDO's car once again, blocking the car in the parking spot.

12.     Victim 1 stated three black males and one Asian male exited the blue Cadillac. All four males were armed with semi-automatic firearms, and were observed wearing a shiesties[1] and

---

[1]      A shiesty is also commonly referred to as a ski mask or balaclava.

3

latex gloves. Victim 1 said he could see the Asian males' face because the shiesty was only covering it halfway. Victim 1 recognized the Asian male as PHIHOANG. Victim 1 was also able to recognize and identify two of the Black males who he knows by their nicknames. One black male was identified as HILL and the other as MCNICHOLS. The third black male was later identified as Weilen Hernandez (W. HERNANDEZ).

13.    Victim 1 stated, HILL ran up on him with a firearm pointed directly at him. HILL then grabbed him by both shoulders and threw him on the hood of FAJARDO's car. At that point, FAJARDO stated, "Chill out, not on my car." HILL then began to pistol whip Victim 1 on the back of his head while punching him at the same time. PHIHOANG walked up to Victim 1 and stated, "Oh you miss me," and began hitting Victim 1 multiple times. Both PHIHOANG and HILL, while armed, grabbed Victim 1 and forced him into the front passenger seat of FAJARDO's car. Victim 1 stated when he was sitting in the front passenger seat, he realized he was leaking blood from his head. PHIHOANG, while still armed, stated, "If you try to get out, I'm going to end your life." PHIHOANG further threatened, "I am going to kill you and your family." Fearing for his safety, and the safety of his family, Victim 1 complied.

14.    Victim 1 described PHIHOANG's firearm as a Glock 27 Gen 4 with a black slide and peanut butter handle. Victim 1 said he knew the exact gun PHIHOANG was using because approximately eight months prior, Victim 1 purchased this firearm for PHIHOANG.

15.    Victim 1 said PHIHOANG got into the rear driver's side of FAJARDO's car and HILL entered the rear passenger side, behind Victim 1.[2] Victim 1 stated FAJARDO was in the driver seat and drove the car outside of the Margaritaville garage.

---

[2]    FAJARDO's car was occupied by Victim 1, FAJARDO, PHIHOANG, and HILL.

16.     Victim 1 stated that during the car ride, PHIHOANG and HILL, demanded Victim 1 sit in the back seat between the both of them. Victim 1 said while seated in between them, HILL was in possession of the Glock 27 Gen 4 that PHIHOANG originally had in his possession. FAJARDO drove for approximately 25 to 30 minutes, until they arrived at an unknown location west of highway US 27. This unknown location was later identified as "The Spot."

17.     During the car ride, PHIHOANG demanded that Victim 1 give him money if he wanted his life to be saved. PHIHOANG and HILL, demanded that Victim 1 call multiple people from Victim 1's cellphone in an attempt to get people to send money in order for Victim 1 to be released. PHIHOANG told Victim 1, "If I don't get my money, every ten minutes I'm going to take one of your fingernails." Victim 1 stated he observed a pair of pliers inside the car and believed they were going to pull his fingernails off, so he continued calling people in an attempt to get money. This continued throughout the entire car ride.

18.     Victim 1 stated when they arrived at "The Spot." PHIHOANG referred to it as such. Victim 1 believed them to be located at a parking lot off US 27. Victim 1 said they drove to the end of an empty parking lot near a grassy area. HILL pulled Victim 1 out of the vehicle and told him to get on his knees. Victim 1 said he complied and knelt down near a tree that had a memorial decorated with flowers and crosses honoring people who died.

19.     Victim 1 stated, while on his knees, Victim 2 arrived shortly thereafter in a black Honda Civic, which investigators later identified as a black Honda Accord (hereinafter referred to as A. HERNANDEZ's car). The Honda Accord was driven by a Hispanic male he knew as A. HERNANDEZ. PHIHOANG ordered Victim 2, at gunpoint, to exit the vehicle and get on his knees next to Victim 1. When Victim 2 was not getting on his knees quickly enough, HILL kicked Victim

2 on the left side of his face causing Victim 2 to fall to his knees. Both Victim 1 and Victim 2 continued to be held at gunpoint by PHIHOANG and HILL, while on their knees.

20. Victim 1 said at one point while he was on his knees, HILL pulled his left hand behind his back while another co-conspirator held his right arm out straight which he believes was to expose a particular tattoo. Victim 1 said he has a tattoo on the inside of his right arm of two racing flags. Victim 1 said he knows several of the co-conspirators through different social circles. Victim 1 advised law enforcement personnel that PHIHOANG has a similar tattoo which Victim 1 has seen.

21. While Victim 1 was being held down to expose this tattoo, PHIHOANG shoved a cloth material into Victim 1's mouth to silence him. PHIHOANG then approached Victim 1 with a blow torch and began burning Victim 1's racing flag tattoo, stating, "I'm gonna burn the tattoo off of you, you don't deserve to have it. I'm going to torture you." PHIHOANG also said, "I will kill your family if you go to the police. We are not done."

22. After PHIHOANG stopped burning Victim 1's arm, both victims continued to be held at gunpoint. PHIHOANG then demanded that the victims strip off all their clothing down to their underwear. Both victims complied. Victim 1 stated while still on their knees unclothed, he observed HILL on a video call demanding money be sent and stated, "We're not playing." HILL then fired a round into the air in an attempt to let the person on the phone know they were serious. HILL then hung up the phone.[3]

---

[3]     Multiple persons were contacted by cellphone throughout the conspiracy. Law enforcement personnel verified with several known individuals who confirmed receiving the phone calls.

6

23.     Victim 1 stated that Victim 2 was allowed to leave this location because he was wearing an ankle monitor and they were afraid the police would discover their location by tracking Victim 2's monitor. Victim 1 stated he was unsure how Victim 2 left the area.

24.     Victim 1 stated he continued to be held at gunpoint against his will as PHIHOANG continued to punch him several times throughout his body. Victim 1 said while he was lying in the grass, he observed the suspects burning something and heard someone say, "We have to burn the evidence."

25.     Victim 1 advised he was in fear for his life and thought he was going to be killed, so he began faking a seizure. Victim 1 stated the HILL, PHIHOANG and the other co-conspirators became nervous. HILL kept checking his pulse to make sure he was still alive. HILL then picked Victim 1 up off the ground and put him in the rear passenger side of A. HERNANDEZ's car. HILL entered the rear driver's side and A. HERNANDEZ entered the driver seat. Victim 1 said they drove for approximately 10 minutes and, while driving, HILL continuously checked Victim 1's pulse.

26.     Victim 1 said the kidnappers began to panic and HILL told A. HERNANDEZ to stop the vehicle. Victim 1 said HILL got out of the vehicle, went around to the passenger rear door, and threw him to the ground on the side of the road. HILL got back into the vehicle and then A. HERNANDEZ drove off. Victim 1 remained on the side of the road "playing dead" for a brief moment.

27.     While unaware of his location, Victim 1 began to walk through the bushes in an attempt to find help. When he walked through the bushes, he observed a residential neighborhood and went looking for help. He then observed two people walking in the neighborhood who he asked to call the police. Officers from Broward Sheriff's Office Weston District deputies arrived.

7

Victim 1 was transported to Broward General Hospital where he was treated for his injuries. Victim 1 sustained injuries to include a laceration to the back of his head from being pistol whipped, which required staples. Victim 1 was also treated for the burn he sustained with the blow torch on his right arm.

28.     During the commission of the crimes, Victim 1 had multiple items stolen from him to include his clothing, a gold Cuban bracelet, and an Apple I-phone 14 Pro.

29.     Victim 1 was shown photographs of Minor Suspect, FAJARDO, PHIHOANG, A. HERNANDEZ and MCNICHOLS. He positively identified them as those involved in the kidnapping conspiracy. In addition to being shown photographs, Victim 1 located an Instagram photograph of HILL and showed it to law enforcement.

### Victim 2's STATEMENT

30.     On or about May 28, 2026, FBI agents along with Hollywood PD Detectives made contact with Victim 2. Victim 2 corroborated Victim 1's accounts of the kidnapping and torture. In addition, Victim 2 stated the following:

31.     Victim 2 was working at a city of Hollywood hotel when his friends, Victim 1 and Witness 1, came to visit him. Victim 2 advised they were waiting in the lobby area and outside of the front of the building until his shift ended at 11:00 P.M. Victim 2 advised during that time, he observed FAJARDO, Minor Suspect, Unidentified white male and Unidentified white female walk into the lobby area. Victim 2 is familiar with Minor Suspect from high school. Victim 2 has seen FAJARDO on prior occasions to include on May 26, 2026, where FAJARDO purchased items from the lobby of the hotel where Victim 2 works.

32.     Victim 2 stated FAJARDO, Minor Suspect, Unidentified white male and Unidentified white female, hung out with Victim 1 and Witness 1 for a little while and then left.

8

Victim 2 said when he got off shift at approximately 11:15 P.M., he began walking toward Margaritaville with Victim 1 and Witness 1. Victim 2 observed FAJARDO and Minor Suspect in the area and he heard Minor Suspect tell FAJARDO that her phone was dying and she needed to go to the car to charge it.

33.     All parties then walked to the 4th floor of the Margaritaville parking garage where FAJARDO's car was parked. Victim 2 stated he was standing at the front of the car with Witness 1, while Victim 1 was sitting in the front passenger seat. Victim 2 observed a blue Cadillac pull up behind FAJARDO's car and slowly drove by. The blue Cadillac quickly swung around and came back, this time stopping behind FAJARDO's car.

34.     Victim 2 observed two black males and one Asian male exit the blue Cadillac wearing latex gloves. Victim 2 said HILL charged directly toward Victim 1, picked him up, and slammed him on the hood of FAJARDO's car. Victim 2 observed HILL punch Victim 1 multiple times in the head while still holding the firearm. Victim 2 stated HILL and PHIHOANG forced Victim 1 into the front passenger seat of FAJARDO's car. During the interview, Victim 2 referred to the co-conspirators HILL and PHIHOANG by nicknames, because he heard other co-conspirators referring to them as such, and he also noted he has seen both on Instagram prior to his kidnapping and recognized their faces.

35.     Victim 2 stated another co-conspirator wearing a gray hoodie and latex gloves, approached him holding a firearm and forced him to get into the rear of A. HERNANDEZ's car. Based on the interviews with Victim 1, Minor Suspect, and others, this co-conspirator was identified as MCNICHOLS. During Witness 1's statements to law enforcement personnel, he also attributes a firearm to a suspect matching the clothing description worn by MCNICHOLS.

9

36.     Victim 2 said A. HERNANDEZ was in the driver's seat of his car and Minor Suspect was in the front passenger seat. MCNICHOLS, who forced Victim 2 into A. HERNANDEZ's car, entered the rear driver's side and continued pointing the firearm at Victim 2 who was also seated in the rear.[4]

37.     Victim 2 said A. HERNANDEZ put directions in his cellphone (a white in color iPhone) without being told and knew exactly where they were going. As they were leaving the Margaritaville garage, they were unable to exit because they did not pay for parking and the guard rail was blocking the exit. Victim 2 said MCNICHOLS exited and attempted to lift the guard rail but was unsuccessful. Minor Suspect then gave MCNICHOLS her phone so he could pay for parking. After paying, they were able to exit the garage.

38.     While driving to their destination, Victim 2 said they pulled into a gas station located on the 2400 Block of North Federal Highway, off Sheridan Street and North Federal Highway. A. HERNANDEZ gave Minor Suspect money to go inside and pay for gas. A. HERNANDEZ pumped the gas while Victim 2 and MCNICHOLS remained inside the car. Victim 2 was still being held at gunpoint by MCNICHOLS.

39.     When Minor Suspect returned to the car, MCNICHOLS demanded Victim 2 to give him his cell phone but Victim 2 initially refused. Minor Suspect stated, "You better do what they say. You are kidnapped." Victim 2 complied and was further forced to open his Bank of America app so that MCNICHOLS could see how much money he had in his account.

40.     A. HERNANDEZ proceeded to drive, dropping off Minor Suspect. Prior to Minor Suspect exiting the car, she leaned over and gave A. HERNANDEZ a kiss. A. HERNANDEZ then

---

[4]     A. HERNANDEZ's car was occupied by Victim 2, Minor Suspect, and MCNICHOLS.

10

pushed a button to utilize CarPlay from his phone and began driving to "The Spot."[5] The remaining passengers in A. HERNANDEZ's car were Victim 1, A. HERNANDEZ, and MCNICHOLS. MCNICHOLS told A. HERNANDEZ to drive fast while the gun was still being pointed at Victim 2. MCNICHOLS continued to point the gun at Victim 2, during the entire ride to "The Spot."

41.     While driving, MCNICHOLS noticed Victim 2 was wearing an ankle monitor. When MCNICHOLS inquired about the ankle monitor, Victim 2 said he had to be home by 1:00 A.M., or the police would come looking for him. Victim 2 said he told them that because he was in fear for his life and hoped they would let him go. Victim 2 said when A. HERNANDEZ heard him say the police would come looking for him, he began to drive faster.

42.     Once they arrived at "The Spot," Victim 2 said he observed the blue Cadillac from the Margaritaville garage and another car parked toward the end of the parking lot. A. HERNANDEZ pulled up near the other cars and PHIHOANG walked over to A. HERNANDEZ's vehicle with a firearm in his possession, pointed it directly at Victim 2, and ordered him to exit the vehicle.

43.     As Victim 2 exited the vehicle, he observed Victim 1 on his knees in a grassy area. As Victim 2 was walking toward Victim 1, HILL grabbed Victim 2's gold Cuban link necklace and attempted to take it off him. When HILL was unsuccessful he ordered Victim 2 to take off his three gold Cuban link necklaces. Victim 2 complied with the demands. HILL then ordered Victim 2 to get on his knees next to Victim 1. Victim 2 said HILL kicked him on the left side of his face because he wasn't getting on his knees quickly enough. Victim 2 then fell to his knees next to Victim 1.

---

[5]     CarPlay mirrors your phones applications onto your vehicle's built-in display, allowing you to get directions (via Apple Maps, Google Maps, or Waze), make calls, send texts, and control music without the distraction of handling your phone.

11

44.     While on his knees, Victim 2 said HILL and another co-conspirator grabbed Victim 1 and held his arm out while PHIHOANG approached Victim 1 with a blow torch and began burning a tattoo on the inside of his right arm. PHIHOANG told Victim 1, "Don't cry!" While PHIHOANG was burning Victim 1, A. HERNANDEZ got out of his black Honda Accord wearing a shiesty and stood there watching. Victim 2 said the same co-conspirator who grabbed Victim 1's arm had a cellphone and was recording the torture.

45.     After PHIHOANG stopped burning Victim 1's tattoo, he asked Victim 2 if he had any tattoos at which time Victim 2 showed PHIHOANG a small star tattoo on his right wrist. PHIHOANG then kicked Victim 2 in the face. PHIHOANG then demanded that both victims remove all of their clothing and strip down to nothing but their underwear. Both victims complied and removed all their clothing while being held at gunpoint.

46.     Victim 2 said MCNICHOLS approached him and demanded that he Zelle $400 to a phone number. While entering the phone number, Victim 2 saw the name "Saul Fajardo" auto populate in the Zelle application.

47.     While Victim 2 was sending the money, he observed HILL point a firearm in Victim 1's direction and fire one round. When Victim 2 was done transferring the Zelle payment, PHIHOANG said to Victim 2, "I'm going to come look for you. I'm not done with you." HILL then forced Victim 2 into the rear passenger side of A. HERNANDEZ's car and HILL got into the rear driver's side of the vehicle. A. HERNANDEZ entered the driver's seat and asked Victim 2 where he lives. Victim 2 said he did not want to tell them where he lives so he gave them a location in Cooper City. He was dropped off at the entrance of a development near Flamingo Road and West Lake Blvd. Victim 2 said he walked to a relative's residence in nothing but his underwear.

12

His relative ordered him an Uber and then he called the police. Both Plantation and Hollywood PDs responded. Victim 2 was not transported to the hospital due to sustaining minor injuries.

48.     During the commission of the crimes, Victim 2 had multiple items stolen from him to include his clothing, 3 Gold Cuban link chains, white Air Pods, white phone charger, 2 house keys, 1 gold, 1 silver on a turbo keychain, silver pocketknife, black metal wallet containing his Florida DL, Colombian ID, Bank of America card, black Adidas sling bag, and a gray I-phone 15 Pro.

49.     Victim 2 was shown photographs of Minor Suspect, FAJARDO, A. HERNANDEZ, and PHIHOANG. He positively identified them as those involved in the kidnapping conspiracy.

50.     Victim 2 was shown a single photograph of HILL but could not make a positive identification. It should be noted, Victim 2 was not transported by HILL.

### LOCATION OF "THE SPOT"

51.     Law enforcement was provided a screenshot of the GPS coordinates Victim 1 received from FAJARDO, by Victim 1's mother. Law enforcement used the same GPS coordinates to locate "The Spot" where Victim 1 and Victim 2 were taken at gunpoint. "The Spot" is located off US Highway 27, located in Broward County, Florida.

52.     On May 27, 2026, Hollywood Crime Scene Technicians responded to "The Spot" for processing. Crime Scene took photographs and recovered items to include items verified as Victim 2's house keys, Adidas brand zippers from a black sling bag, a silver pocketknife, and burnt clothing from both Victim 1 and Victim 2.

### SUSPECT VEHICLES AND SUSPECT IDENTIFICATION

53.     On May 27, 2026, law enforcement personnel reviewed closed-circuit television cameras of the Margaritaville parking garage located at 1111 N Ocean Drive, Hollywood, Florida,

13

and observed three vehicles consistent with vehicles identified by Victim 1 and Victim 2, exiting the parking garage in succession at approximately 11:59 P.M.

54.     Vehicle one was identified as a blue Cadillac, FL tag FUJP99, registered to conspirator W. HERNANDEZ and another person. VIN lookup confirms that the blue Cadillac was manufactured in Lansing, Michigan. Vehicle two was identified as a red Hyundai Elantra, FL tag XDW740, registered to FAJARDO. VIN lookup confirms that the red Hyundai Elantra was manufactured in Ulsan, South Korea. Vehicle three was identified as a black Honda Accord, FL tag FRDS09, registered to another person. VIN lookup confirms that the black Honda Accord was manufactured in Marrysville, Ohio.

55.     At approximately 7:30 P.M., the red Hyundai Elantra was located by the Hollywood PD Street Crimes unit being driven by FAJARDO. FAJARDO was taken into custody on unrelated state charges by Hollywood PD. He was transported back to the Hollywood PD where he invoked his right to counsel. FAJARDO's cellphone was seized pending a search warrant.

56.     At approximately 8:00 P.M., the black Honda Accord was located by the Hollywood PD Street Crimes unit being driven by A. HERNANDEZ and had a front seat passenger, Minor Suspect. A. HERNANDEZ voluntarily came to the Hollywood PD to speak with law enforcement. In a recorded statement, A. HERNANDEZ stated he was inside the Margaritaville parking garage at the time of the incident and that Minor Suspect, and Victim 2 entered his car. They then traveled to a location using GPS coordinates on a cellphone. Both Victims stated in recorded interviews that they were aware at the time of their kidnapping, the driver of the black Honda Accord was A. HERNANDEZ. A. HERNANDEZ's cellphone was seized pending a search warrant.

14

57.     Minor Suspect also provided a voluntary statement to law enforcement personnel. During her statement, she confirmed she was at Margaritaville parking garage with her friends FAJARDO and A. HERNANDEZ. She confirmed that she used her cellphone to pay for parking to exit the parking garage. She further confirmed stopping at the gas station. She told law enforcement officers that she was then dropped off in the area of her home. Minor Suspect, who was in possession of her cellphone, authorized law enforcement to search her phone. A review of her phone revealed text messages between her and contact "Gordo." Gordo is the known nickname of FAJARDO. The text message chain confirms that Victim 1, who is referred to by a nickname[6] was assaulted. Communications further indicated that there was video evidence of the assault. Minor Suspect and FAJARDO also refer to deleting any messages about Victim 1.

 

---

[6]      Redacted from image for purposes of the complaint.



58.     On May 27, 2026, at approximately 9:20 P.M., the blue Cadillac was located by the Hollywood PD Street Crimes unit being driven by W. HERNANDEZ. W. HERNANDEZ voluntarily came to Hollywood PD to speak with law enforcement. In a recorded interview, W. HERNANDEZ told law enforcement that his friend, MCNICHOLS, asked him to give him a ride and in exchange he would pay W. HERNANDEZ $200. W. HERNANDEZ agreed. W. HERNANDEZ was asked by MCNICHOLS to pick-up two additional males, later identified as HILL and PHIHOANG. W. HERNANDEZ drove to Margaritaville's parking garage. Once inside the garage, W. HERNANDEZ was told to stop when he saw a red Hyundai. PHIHOANG sent W. HERNANDEZ GPS coordinates from PHIHOANG's cellphone to W. HERNANDEZ's cellphone (an iPhone) and told W. HERNANDEZ to go to the location, where he would then pay him $200. W. HERNANDEZ drove to the location, which led him to "The Spot". While W. HERNANDEZ admitted to being a driver and being present at "The Spot," he denied involvement in the assault but admitted to being outside the car and observing Victim 1 being assaulted.

16

59.     W. HERNANDEZ confirmed PHIHOANG had a firearm in his hand at some point during the conspiracy. Consistent with witness statements, W. HERNANDEZ confirmed hearing a gunshot while at "The Spot." MCNICHOLS and PHIHOANG left "The Spot" in W. HERNANDEZ's car and traveled to an unknown gas station where he was waiting for HILL in order to give HILL a ride. Shortly thereafter HILL arrived at the gas station in A. HERNANDEZ's car. At this point, W. HERNANDEZ's car occupants are MCNICHOLS, PHIHOANG, and HILL. W. HERNANDEZ then drove all occupants, dropping them off at unknown addresses.

60.     Also, during his statement, W. HERNANDEZ stated that he keeps latex gloves in his work bag and/or vehicle. He stated that during the conspiracy, PHIHOANG went into his work bag and removed the latex gloves. He then confirmed that he, along with co-conspirators PHIHOANG, HILL, and MCNICHOLS, wore latex gloves during the conspiracy. W. HERNANDEZ also confirmed that he wore a black shiesty. W. HERNANDEZ provided consent to search his cellphone. A complete analysis is pending.

INTENTIONALLY LEFT BLANK

17

## CONCLUSION

61.     Based upon the evidence procured by the Affiant, there is probable cause to believe

Saul Alfonso Fajardo aka "Gordo," Justin Phihoang Le aka "Chino," Amari Tamire Hill aka

"Black," Anthony Teruel Hernandez, Marikevies McNichols, Jr., aka "Keeve," aka "Agent," and

Weilen Hernandez have violated Title 18, United States Code, Sections 1201(a)(1), (c), (g)(1)(A),

(g)(1)(B) and 2 (kidnapping and conspiracy to commit kidnapping).

Thomas Lester, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
█████████, this ___2nd day of June 2026,
in Fort Lauderdale, Florida.   Sworn in-person.

HONORABLE DETRA SHAW-WILDER
UNITED STATES MAGISTRATE JUDGE

18